## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

**TWIN COUNTY GROCERS, INC.,**

**Plaintiff,**

**vs.**

**CIVIL NO. 97-2052 (DRD)**

**MENDEZ AND CO., INC., et al.,**

**Defendants.**

---

### OPINION AND ORDER

Pending before the court is a Motion for Partial Summary Judgement ("the Motion") filed by plaintiff, Twin County Grocers, Inc.("Twin County") on November 3, 1997.  (Docket No. 37). Twin County seeks summary judgment on Counts III, IV and V of its Amended Complaint. (Docket No. 4).  Also pending before the Court are several motions presented by Twin County and Mendez and Co. Inc. ("Mendez"), namely Mendez' opposition to Twin County's motion for summary judgment and cross-motion for partial summary judgment as to Counts I and II of Mendez' Counterclaim ("the Opposition"), Twin County's reply brief in further support of Twin County's motion for summary judgment and in opposition to Mendez' cross-motion for partial summary judgment (the "Reply"), and Mendez' brief in further support of Mendez' opposition and in further support of Mendez's cross-claim (the "Sur-Reply").  (Docket No. 92).[1]

### I. FACTUAL BACKGROUND

---

[1]On March 31, 1998, the parties filed with the court a Joint Informative Motion (Docket No. 92) informing the court that pursuant to the filing requirements set out in the court's Standing Order of October 24, 1997, Twin County and Mendez filed, together with the informative motion, a master copy of the Motion, the Opposition, the Reply and the Sur-Reply.

Docket number 107 and 109 for leave to file supplemental briefs in support of Mendez' motion for partial summary judgment are **GRANTED.**  Docket number 111 for setting of oral argument is hereby declared **MOOT** as oral argument has already been held.

Plaintiff Twin County, a corporation organized under the laws of the state of New Jersey, is a cooperative-based warehouse distributor of supermarket merchandise with offices in New Jersey and New York. Twin County supplies supermarket and other customers with over 17,000 types of supermarket products and general merchandise. Twin County purchases said products from numerous national brand name suppliers and then distributes them from warehouses in New Jersey and New York. In the course of its business, Twin County purchases in excess of $500 million in goods each year which are sold to customers and members located in various states including New York, New Jersey, Connecticut, Pennsylvania and Puerto Rico.

Defendant Mendez is a Puerto Rico Corporation in business as a wholesale distributor of liquor and grocery products to supermarkets of certain national brand names suppliers/principals located in the United States, Canada, Europe, South America and Puerto Rico.

Since 1994, Twin County has sold products from its warehouses in New Jersey and New York to certain customers with supermarkets located in Puerto Rico. Such customers included Supermercados Amigos ("Amigos"), the second largest supermarket chain in Puerto Rico operating at least 50 supermarket stores in the Commonwealth, Supermercados Grande ("Grande"), the third largest supermarket chain in Puerto Rico operating approximately twenty eight (28) retail supermarkets, and Supermercados Unidos ("Unidos"), a cooperative of supermarkets owners operating under the name Unidos.

On October 4, 1996, A. Cordero Badillo, Inc. d/b/a Supermercados Grande became an owner/member of the Twin County cooperative organization and, as an owner/member, acquired the right to purchase supermarket goods and general merchandise from Twin County on a purchase-order-by-purchase-order basis. As a member of Twin County, Grande is also under a requirement to purchase a certain percentage of its total wholesale purchases "from all suppliers

2

in the United States mainland." (See Plaintiff's Motion, p. 7). Grande's membership in the co-cooperative, however, imposes no restriction on the goods or amount thereof that Grande may purchase from suppliers in Puerto Rico. Twin County supplies Grande with numerous categories on national brand name merchandise. All sales by Twin County to clients in Puerto Rico have been "F.O.B. Twin County's dockside," with all risk of loss and title passing to the purchasing retailers at Twin County's warehouse dockside in New Jersey and New York. Twin County has no facilities or operations in Puerto Rico.

On June 6, 1997, Mendez informed a number of its suppliers/principals of what Mendez named "the diversion scheme" by Grande and Twin County and demanded that they honor their contractual obligations by requiring Twin County to stop selling to Puerto Rico retailers items for which they had granted Mendez an exclusive distributorship. (See Plaintiff's Motion, Exhibit E). Otherwise, Mendez forewarned that it would seek the protection and remedies of Law 75. (See Docket No. 6, p. 3). Mendez also wrote to Grande on June 7, 1997 stating that Grande's purchases of products from Twin County "interfere and jeopardize the relation between Mendez [as the] exclusive Distributor" of several national brand name manufacturers. As such Mendez demanded that Grande "stop and desist" its purchases from twin county. (See Plaintiff's Motion, Exhibit D).

## II. PROCEDURAL BACKGROUND

In response to Mendez' demands, on July 11, 1997 Twin County filed the instant complaint against Mendez (Docket No. 1). Shortly thereafter, on August 14, 1997, Twin County filed an Amended complaint naming, Grande and eleven suppliers as co-defendants. (Docket No. 4). In its Amended Complaint, Twin County asserts claims against Mendez for violations of the Sherman Act, 15 U.S.C. § 1 and 2 (Count I), and for tortious interference with Twin County's

3

relationship with its customers and national brand suppliers. (Count II).  Twin County also seeks

declaratory judgement declaring that it has not interfered with Mendez' relationship with the

eleven suppliers (Count III); declaring that Law 75, Laws of P.R. Ann. tit. 10, §278 *et seq.*, does

not require the national brand name suppliers to prevent Twin County from reselling their

products to Grande and others in New Jersey and New York (Count IV); and declaring that, if

Law 75 is found to prohibit such sales, it is unconstitutional as contrary of the Interstate

Commerce Clause. (Count V).

In its counter claim, (Docket No. 6), Mendez maintains that the actions undertaken by

Twin County and Grande constitute tortious interference with the contracts between Mendez and

each individual supplier resulting in damages for which Twin County and Grande are jointly and

severally liable for. (Count I).  Mendez also asserts that the contractual relationship between

Twin County and Grande impairs Mendez' exclusive distribution contracts with its suppliers.

Mendez claims that "[s]ince the contractual relationship between Twin County and Grande has

an illicit cause and/or consideration. . . " the court should declare it void and unenforceable.

(Count II).

On November 3, 1997, Twin County filed a motion for  partial summary judgment on

counts III, IV and V.  Twin County moved the court to declare that 1) Twin County has not

interfered with or impaired Mendez' contractual relationship with any party; 2) Law 75 does not

prevent Twin County from selling to Grande and other retailers in New York and New Jersey

merchandise acquired form national suppliers; 3) Mendez is not protected under Law 75 with

respect to Twin County's purchases from national suppliers and subsequent sale to Puerto Rico

retailers; and 4) Grande and other retailer may continue to purchase goods from Twin County.  In

the counter motion for summary judgment Mendez asks the court to find that Twin County's

4

activities at issue constitute tortious interference of contractual relationship and a contract in prejudice of a third person.

## III. SUMMARY JUDGMENT STANDARD

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary" Vega-Rodriguez, 110 F.3d 174, 178 (1st Cir. 1997) (citing Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The opposing party must then designate specific facts that show that there is a genuine triable issue. Id. at 324, 106 S.Ct. at 2553; Fed. R. Civ. P. 56(e).

At the summary judgment level, the evidence must be examined "drawing all reasonable inferences helpful to the party resisting summary judgement." Cortes-Irizarry v. Corporación Insular De Seguros, 111 F.3d 184, 187 (1st Cir. 1997)); see United States v. Diebold, Inc., 369 U.S. 654, 655 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam) ("On summary judgement the inferences to be drawn from the underlying facts [] must be viewed in the light most favorable to the party opposing the motion."). In order to survive the "swing of the summary judgment axe," Mack v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989), the mover must satisfactorily show that there are "genuine issue[s] of material fact[s]"left to be tried. Ayala Gerena v. Bristol Myers-Squibb Co., 95 F3rd 86, 94 (1st Cir. 1996). A fact is

5

deemed "material" if the same "potentially affect[s] the suit's determination." Garside v. Osco Inc., 895 F.2d 46, 48 (1st Cir. 1990). "An issue concerning such a fact is "genuine" if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Cortes-Irizarry v. Corporacion Insular, 111 F.3d at 187. If the party opposing summary judgment "generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgement is inappropriate." Beacon Enterprises v. Menzies 715 F.2d 757, 762 (2nd Cir. 1983). At this stage, there is "no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood. . ." Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). However, "summary judgment procedures should be used sparingly... where issues of motive and intent play leading roles." Poller v.Columbia Broadcasting System, 368 U.S. 464, 473, 82 S.Ct. 486, 491 (1st Cir. 1988). Trial courts should observe a "cautious approach to summary judgments where issues of motive and intent must be resolved." William Cote V. P.B. Diagnostics Systems, Inc., 50 F.3d 1115, 1121 (1st Cir. 1995) citing Oliver v. Digital Equipment Corp., 846 F2d 103, 107 (1st Cir. 1988). Notwithstanding, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F2d 5 (1st Cir. 1990), recently cited at Ayala Gerena, 95 F.3d at 86.

## IV. DISCUSSION

In reading the parties' motions and accompanying briefs, the court discerns some

confusion as to the true issues raised in the motion and cross-motion for summary judgment. This is the result of the nature and complexity of the factual and legal issues involved and the fact that the parties are moving, opposing, replying and sur-replying to two separate motions for summary judgment in single fillings. In many occasions the parties argue and counter-arguing points of law which the other side does not make.

To simplify the analysis in this case, the court first determines the role and applicability of Law 75 to the controversy at issue, thereby addressing Count IV and V of Twin County's Amended Complaint. The court then determines whether Twin County's actions have interfered with Mendez' contractual relationships, examining Count III of Twin County's Amended Complaint and Counts I and II of Mendez' Counter-Claim.

A. Applicability of Law 75

In its motion for summary judgment, Twin County requests the court to find that Law 75 does not prohibit the sale of supermarket goods and general merchandise to Grande and other retailers outside Puerto Rico, such as in New Jersey and New York. (Count IV of the complaint). Twin County maintains that "[t]here is nothing on the face of Law 75, or in its legislative history, that even suggests that the law has any effect on the conduct of third-parties (such as Twin County and Grande) who are strangers to the "principal-dealer" relationship. (Twin County's Motion, p. 12) (emphasis in the original). Moreover, Twin County claims that Mendez' reliance on General Office Products v. Gussco Manufacturing, Inc., 666 F.Supp. 328 (D.P.R. 1987) is ill-founded since, "in Gussco, none of the manufacturer with whom Mendez maintains alleged exclusive distribution contracts have sold to third parties which distribute in Puerto Rico." (Twin County's Motion, p. 14). Finally, Twin County claims that to the extent Law 75 prohibits Twin

7

County's sale to Puerto Rico retailers it is unconstitutional as it violates both the Commerce Clause and the Supremacy Clause of the Constitution. As such, Twin County argues that summary judgment should be entered in plaintiffs' favor. The court disagrees. The Court will not unnecessarily plunge into the constitutionality of the law unless other alternate state statutory solutions are exhausted. Public Service Co. of New Hampshire v. Patch, 167 F.3d 15, 24 (1st Cir. 1998); Pustell v. Lynn Public Schools, 18 F.3d 50 (1st Cir. 1994); Casa Marie Inc. v. Superior Court of Puerto Rico for the District of Arecibo, 988 F.2d 252 (1st Cir. 1993); Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 61 S.Ct. 643 (1941).

*1. Whether Law 75 requires that Mendez' suppliers prevent Twin County from selling their products to Puerto Rico retailers.*

Twin County's premise, that Law 75 does not bar the sale of goods to Grande and other Puerto Rico retailers outside the island, presents two distinct issues that should be analyzed separately. First, it must be made clear that it is undisputed that Law 75 does not directly govern third parties outside the grantor-distributor relationship.[2] As Law 75 makes clear, "no principal or grantor may directly or indirectly perform any act detrimental to the established relationship" P.R.Laws Ann. tit 10 §278a (emphasis added). In the instant case, Twin County is not a party to the grantor-distributor relationship between Mendez and its suppliers. Accordingly, Law 75 does not govern Twin County's of selling goods to Puerto Rico distributors. The court's inquiry, however, does not end here. The suppliers' obligations towards Mendez under Law 75 may require them to alter their relationship with Twin County and thus indirectly affect the latter.

_____

[2]The parties do not dispute the contention that Law 75 is applicable solely to the principal and distributor. See Twin County's Motion p. 11-12; Mendez' Opposition, p. 2 ("Mendez does not assert any rights against either Grande or Twin County on the basis of Law 75. Indeed, Law 75 does not apply to either one of them.").

The second issue that arises from Twin County's premise is whether Law 75 can be asserted against Mendez' suppliers since "none of the manufacturers with whom Mendez maintains alleged exclusive distribution contracts have sold to third parties which distribute in Puerto Rico." (Twin County's Motion, p. 14). In essence, Twin County argues that law 75 is not even triggered against Mendez' suppliers since said principals do not sell to other entities who distribute within Puerto Rico.

In support of this claim, Twin County relies first on the statue itself. It cites the following excerpt from the § 278a-1:

> (b) it shall be presumed, but for evidence of the contrary, that a principal or grantor has impaired the existing relationship in any of the following cases:
> (1) When the principal or grantor establishes facilities in Puerto Rico for the direct distribution of merchandise or the rendering of services which were previously in the charge of the dealer;
> (2) when the principal or grantor establishes a distribution relationship with one or more additional dealers for the area of Puerto Rico or any part of said area in conflict with the contract existing between the parties . . .

See Twin County's Motion, p. 11-12 (Emphasis added by Twin County in its Motion); Laws or P.R. Ann. tit. 10, § 287a-1. Twin County also relies on Gussco Manufacturing, Inc., 666 F.Supp. 328. In that case, Gussco, a New York manufacturer of officer supplies, sold its products at the wholesale level throughout the United States, including Puerto Rico. Plaintiff, General Office, was the sole distributor of a line of Gussco products in Puerto Rico. A third party, A.M. Capen's & Sons (Capen's), then began selling Gussco products in Puerto Rico wholesale. A.M. Capen's purchased said products directly form Gussco. General Office demanded that Gussco cease its sales to the third party as said conduct was allegedly in violation of Law 75. Twin County relies on the fact that Capen's sold Gussco products directly in Puerto Rico— as opposed to a location

9

outside the Commonwealth— to conclude that the court's holding was "that Gussco's failure to cease its dealings with third parties <u>distributing its wholesale products in and into Puerto Rico</u> constituted a violation of Law 75." (Twin County's Motion, p. 13-14)(emphasis in the original).

Twin County, thus, makes the argument that the protections of Law 75 should apply only to the extent grantors/principals interfere with the established relationship with a dealer by establishing facilities within Puerto Rico to directly sell its products, or by selling to a third party who in turn sells the products within Puerto Rico. Because in the case at bar, Twin County does not actually distribute the goods at issue in Puerto Rico, but rather Puerto Rico retailers purchase them in New York and New Jersey and then transport them to the island, it argues that Mendez may not avail itself of Law 75 to require its suppliers to prevent Twin County from selling to Puerto Rico retailers. The court declines Twin County's invitation to interpret Law 75 in this manner.

The Dealer's act, better known as Law 75, was enacted to protect distributors in Puerto Rico from the arbitrary termination or impairment of the distribution agreement by the principal without just cause. <u>Vulcan Tools of Puerto Rico v. Makita U.S.A, Inc.</u>, 23 F.3d 564, 568 (1st Cir. 1994); <u>R. W. Int'l Corp. v. Welch Food, Inc.</u>, 13 F.3d 478, 482 (1st Cir. 1994). "The legislature had observed that dealers in Puerto Rico were particularly vulnerable to summary termination once they had established a favorable market for a principal's product."[3] <u>Draft-Line Corp., v.</u>

---

[3]The Statement of Motives of Act 75, 1964 P.R. Laws 4th Reg.Sess. 231 declares:

"The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers, concessionaires, or agents, as soon as these have created a favorable market and without taking into account their legitimate interests.
The Legislative Assembly of Puerto Rico declares that the reasonable stability in the dealer's relationship in Puerto Rico is vital to the general economy of the country, to the public

Hon Company, 781 F.Supp. 841, 844 (D. Puerto Rico 1991); Medina & Medina v. County Pride

Foods, Ltd., 122 D.P.R. ___, 88 J.T.S. 106 (June 30, 1988) (Law 75 "was designed to give

dealers, vis-a-vis manufacturers, the necessary bargaining power mechanism to discuss

distribution changes.") (translation included in Appendix A in 858 F.2d 817, 82).  As such, the

Act prohibits "the termination by the principal . . . of the relationship derived from a dealer's

contract or the refusal to renew said contract on its normal expiration, except for just cause, this,

notwithstanding the existence of a clause in the contract reserving to the parties the unilateral

right to terminate the existing relationship." Vulcan Tools, 23, F.3d at 568 (quoting United

Medical Equipment Corp. v. S. Blickman, Inc., 260 F.Supp. 912, 913 (D. Puerto Rico 1966)).

In 1966, the Act was amended and currently reads as follows:

> Notwithstanding the existence in a dealer's contract of a clause reserving
> to the parties the unilateral right to terminate the existing relationship, no principal
> or grantor may directly or indirectly perform any act detrimental to the established
> relationship or refuse to renew said contract on its normal expiration, except for
> just case.

P.R.Laws Ann. tit. 10, § 278a (emphasis added).   With this amendment, "the protection afforded

to dealers under Law 75 was extended to include the conduct of a principal which even though it

did not end the contract it was deemed detrimental to the distribution relationship." Irvine, IRG

Research Group, Inc., v. Murad Skin Research Laboratories, __ F.3d __, 1999 WL 453845, *3

(1st Cir. (Puerto Rico); Vulcan Tools, 23 F.3d at 568 ("The 1966 amendment was intended to

cover cases where the principal impairs the distributor's contractually acquired rights.")(citing

Gussco 666 F.Supp. at 331).  This is further elucidated in the Report by the Puerto Rico House of

---

interest and to the general welfare, and in the exercise of its police power, it deems it necessary to
regulate, insofar as pertinent, the field of said relationship, so as to avoid the abuse caused by
certain practices."

Representatives' Committee on Industry and Commerce stating that:

> The amendments introduced by this Bill are with such purpose: to
> establish with absolute clarity the legislative will in which such law based itself
> since its inception . . .
> Therefore, one of the proposed amendments has the purpose of establishing with
> absolute precision that the law covers not only the case of a distributor who is deprived of
> the distribution of a product without just cause, but also <u>every situation of impairment of
> a line of distribution.</u>

IV Servicios Legislativos 637-38 (1966) (translation provided in <u>Gussco</u> 666 F.Supp. at
331.)(emphasis added).  The language of the Act and the intent of its drafters strongly suggests
that Law 75 is, thus intended to prevent "every situation" where a grantor/principal undermines
the established relationship with its distributor.

Twin County's reliance on § 278a-1(b)(1) & (2) and <u>Gussco</u> to suggests that the Act's
protection is triggered only when the grantor or a third party establishes a line of distribution
within Puerto Rico (and not when Puerto Rico retailers bypass the local distributor purchasing
goods in the mainland from stateside wholesalers) is misguided.  First, as the First Circuit Court
of Appeals has recently noted that Law 75 merely "enumerates some instances of impairment by
way of illustration. . ." <u>Irvine</u>, __ F.3d at __, 1999 WL 453845 *3.  Following the reasoning of
the First Circuit Court, this is so because "The Report of Committee on Industry and Commerce,
House of Representatives, IV Servicios Legislativos 637-38 (1966), concedes that it would be
impossible to enumerate all acts constituting impairment." <u>Id</u>. at *3 n.3.  This language suggests
that the examples of impairment enumerated by the statute in § 278a-1(b) are not exhaustive.

Further, Twin County's interpretation of the holding in <u>Gussco</u> is unduly restrictive.  As
noted above, in <u>Gussco</u> a third party began selling office supplies in Puerto Rico which it
purchased from Gussco, the supplier.  Gussco's exclusive distributor in Puerto Rico, alleged that

12

the actions by the third party interfered with its exclusive distribution agreement.  The court

found that "[i]t is clear that the 1966 amendment adding the impairment-of-contract cause of

action intends to cover this type of parallel market distributorship in contravention of a

voluntarily-established exclusive contract."  Gussco, 666 F.Supp. at 331.  Nothing in the

language of the opinion, however, suggest that its holding turns on the fact that the third party

distributed the products within Puerto Rico.  On the contrary, the Gussco court describes the

nature of the case as one which "deals with a manufacturer who incurs in acts which impair the

contractually-acquired rights of a distributor to distribute in his assigned market."  Id. at 331 n.6.

In the instant case, Mendez alleges that a third party, Twin County, purchases goods from

national suppliers and re-sells them to Puerto Rico retailers which interferes with Mendez'

exclusive distributorship agreement.[4]  Under this scenario, a parallel line of distribution is

established. The fact that the retailers purchase the goods outside of Puerto Rico, however, does

not lessen the impairment of the a distributor's exclusive agreement.  "The principal's obligation

under the law is not to impair the distribution relationship . . ." Id. at 331.  Whether such

impairment results from a grantor or third party establishing a parallel line of distribution within

the Commonwealth or from selling to Puerto Rico retailers outside of the island is not

determinative.

As discussed above, because it is a third party outside the grantor-distributor relationship,

Law 75 does not directly govern Twin County's business activities with Puerto Rico retailers.

Nevertheless, neither the plain language of the law, the legislative intent nor the relevant case law

---

[4]The nature and the extent of the right and obligations of the parties in the distributorship agreements
between Mendez and the national suppliers parties to this litigation are discussed below.

13

support Twin County's assertion that Law 75 permits Mendez' suppliers to allow parallel lines of distribution into Puerto Rico so long as the transaction takes place outside the island. While Law 75 gives Mendez no recourse against Twin County directly, the statute does provide for Mendez to enforce its exclusive distributorship agreements with its suppliers. To hold otherwise would create a loophole allowing suppliers to circumvent their obligations under the Act. Suppliers could establish parallel lines of distribution in Puerto Rico simply by having Puerto Rico retailers purchase the goods outside of the island either directly from the supplier or a third party. This outcome is contrary to the Legislature's intent in enacting law 75 and the 1966 amendments in particular. See Id. ("In 1966, the Legislature of Puerto Rico amended Law 75 to eliminate any loopholes."); IV Servicios Legislativos 637-38 (1966) (in enacting the 1966 amendments the Legislature sought to make the law's provisions more clear in order to "impede any and all intent of evasion . . . .")(translation provided in Gussco 666 F.Supp. at 331.).

"The protection afforded dealers by Law 75, however, is circumscribed by those rights acquired under the agreement regulating their business relationship. Therefore, whether or not an impairment has taken place will depend upon the specific terms of the distribution contract." Irvine, __ F.3d __, 1999 WL 453845, * 3; Vulcan Tools, 23 F.3d at 569 ("The question whether there has been a 'detriment' to the existing relationship between supplier and dealer is just another way of asking whether the terms of the contract existing between the parties have been impaired."). As such, to establish a violation of Law 75, there must be a showing that the contractual rights of the distributor have been impaired.

As noted above, the 'established relationship' between dealer and principal is bounded by the distribution agreement, and therefore the Act only protects against detriments to contractually

14

acquired rights. Vulcan Tools, 23 F.3d at 569.   However, Law 75 is not intended to be interpreted in such a manner as to create a "safe haven for dealers to avoid the express terms of the contracts to which the willingly subscribed . . ." Nike Int'l, Ltd. v. Athletic Sales, Inc., 689 F.Supp. 1235, 1238 (D. Puerto Rico 1988).  Nor does it "operate to convert non-exclusive distribution contracts into exclusive distribution contracts." Vulcan Tools, 23 F.3d at 569.  "The law imposes no prohibition upon the principal of selling or establishing parallel distributorship agreements if he reserved the right to do so.  The clear burden imposed is to deal in good faith with his contracting party and not to impair the established relationship, whatever the relationship is." Gussco, 666 F.Supp. at 331.  "The clear intention of the parties prevails." Id. at 332.

However, in the instant case, the exact nature of Mendez' contractual rights vis-a-vis its national suppliers has not been clearly established.  In its statement of undisputed facts Mendez maintains that:

> Mendez was contractually designated the exclusive distributor in Puerto Rico for products manufactured and/or supplied by. . .  General Mills, Inc., Bumble Bee Seafoods, Inc., The Procter and Gamble Commercial Company, Church & Dwight Co., Inc., MeIlheny Company, James River Corporation and Riviana Foods, Inc.

(Mendez' Statement of Undisputed Material, Docket No. 101, p. 2, n.1) (emphasis added).

Mendez also asserts that:

> Mendez has been contractually designated as the only distributor to date, and thus is the sole distributor in the territory of Puerto Rico, for . . . Dole Packaged Foods Company, First Brands Puerto Rico, Inc., Kikkoman international, Inc. and Uniliver de Puerto Rico, Inc.

(Id. at p. 2, n.2) (emphasis added).  Mendez relies on these facts to make the claim that Twin

15

County's actions constitute interference with the "exclusive and/or sole distribution rights for certain products in Puerto Rico granted to Mendez by its principal-suppliers." (Mendez' Opposition, p. 13). These facts, however, are far from undisputed.

As for those suppliers which Mendez claims to be its exclusive distributor, at least one of them objects to Mendez' characterization of the nature of and obligations under the distributorship agreement. On February 17, 1998, co-defendant McIlhenny Company ("McIlhenny") filed a Response to Mendez' motion for summary judgment. (Docket No. 72). In its submission, McIlhenny states unequivocally that:

> [a]s its clear form the May 29, 1991 letter, McIlhenny specifically agreed with Mendez not to sell <u>directly</u> to third parties <u>in</u> <u>Puerto</u> <u>Rico</u>. It explicitly did not tie its hands from making any sales whatsoever <u>outside</u> <u>Puerto</u> <u>Rico</u>, not did it limit or undertake to police the resale of McIlhenny products by third parties purchased outside Puerto Rico.

(<u>Id</u>., p. 3, para. 5). MchIlhenny adds that "Mendez has failed to carry its burden of demonstrating the absence of factual dispute, with respect to its alleged exclusive distributorship for McIlhenny." (<u>Id</u>., p. 4, para. 7). In addition, as Twin County notes, the distributorship agreement between Mendez and Riviana Foods dated August 1984 provides that:

> Seller appoints Distributors its exclusive representative for packaged riche throughout the Commonwealth of Puerto Rico. . . Seller intends that it will generally sell the products through Distributor, however, this Agreement shall not act to inhibit or deny seller's right in Seller's sole discretion to sell the Products to any buyer.

(Twin County's Reply, p. 3).

Also, at least one of the suppliers with which Mendez claims to have a sole distributorship agreement, takes issue with Mendez' view of the obligations of the parties to the agreement. Dole Packaged Food Company, Inc. ("Dole"), filed a response to Mendez' motion on

16

February 18, 1998. (Docket No. 73). In said response, Dole rejects Mendez' claim "that the terms of its sole or exclusive distributorship require Dole to 'put an end' to certain sales between Twin County and Grande." (Id., p. 1-2, para. 1). Dole further states "[t]here is no support in the record for the allegation that Mendez 'has been contractually designated as the only distributor' of Dole's products in Puerto Rico." (Id., p. 3, para. 5).

Attached to the motion, Mendez included a barrage of documents in support of its contention. While Mendez provides copies of the exclusive distributorship contracts with three of its suppliers, the majority of the documents provided are letters confirming Mendez's status as exclusive distributor. Some simply refer to Mendez as the exclusive distributor without expounding on the extent of the parties' obligations. In others there is no suggestion that the agreement is one of exclusive distributorship. (See Mendez's Opposition, Exhibit B). However, even if these documents could demonstrate that there was no dispute as to the fact that Mendez was the exclusive and or sole distributor for Puerto Rico of all the mentioned suppliers, the court is not certain that this alone would be sufficient to require the suppliers to prevent Twin County from selling to Puerto Rico retailers. This is because, even if Mendez could show that its relationship with all its suppliers was one of exclusive distributor, an exclusive distributorship "is simply a mechanism by which a supplier agrees to sell its products for resale to a single distributor in a given region. This implies not authorizing other distributors for the same area. It includes abstaining form selling directly to other commercial outlets in the region." Gussco, 666 F.Supp. at 332-333. In the instant case, no other distributors have been authorized in Puerto Rico by the suppliers nor is the supplier directly selling to Puerto Rico retailers. Rather, as Twin County notes, the retailers are purchasing the merchandise outside of Puerto Rico for sale to

17

consumers in the island. As noted above, Law 75 affords protection against impairment of those rights acquired under the agreement regulating the grantor-distributor business relationship. Irvine, __ F.3d __, 1999 WL 453845, * 3; Vulcan Tools, 23 F.3d at 569. Thus, even if it were undisputed that Mendez is the exclusive distributor for all its suppliers, Mendez has presented no evidence that said exclusive or sole distributorship contract was intended by the parties to include an agreement to prevent purchases outside the Commonwealth by Puerto Rico retailers. The scope of Mendez's exclusivity is thus also at issue. The Court is impeded from concluding that the exclusivity scope of the agreement is "clear", meaning that it can "be understood in one sense alone, without leaving any room for doubt, controversies, or differences of interpretation." Borschow Hospital & Medical v. Cesar Castillo, 96 F.3d 10, 15 (1st Cir. 1996) citing Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.2d 66, 69 (1st Cir. 1995).

It may well be that such an obligation is included or can be derived from the exclusive or sole agreement with some or all of the suppliers in this case. If such an obligation is found to be a contractually agreed upon right, Law 75 affords protection against its impairment. However, in the absence of a clear showing that such a contractual right exists, the Act does not afford relief to Mendez.

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Moreover, all reasonable inferences must be made in favor of the party resisting summary judgement. Cortes-Irizarry v. Corporación Insular De Seguros, 111 F.3d 184, 187 (1st Cir. 1997)); see United States v. Diebold, Inc., 369 U.S. 654, 655

18

82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).  In the instant case, Mendez[5] has failed to

show the absence of genuine issue of fact as to the particular nature of its relationship with each

individual distributor.  In addition, Mendez has not demonstrated that in those cases in which

Mendez is the exclusive distributor, the agreement includes an obligation to ensure that other

wholesalers do not sell merchandise outside Puerto Rico which eventually reaches Puerto Rico

retailers.[6]  There are clear issues of "motive" and "intent" as to the scope of the exclusivity

covenant which preclude the issuance of summary judgment.  William Coll, 50 F.3d at 1121;

Lipsett, 864 F.2d at 895.  Because a genuine issue of material fact exists regarding the nature and

extent of the relationship between Mendez and its suppliers, summary judgment on Count IV of

Twin County's Amended Complaint (seeking that the court declare  that Law 75 does not require

the national brand name suppliers to prevent Twin County from reselling their products to

Grande outside Puerto Rico) is inappropriate at this stage.

*2. Constitutional Claims*

Twin County also asserts that to the extent Law 75 is interpreted to interfere with its

relationship with Puerto Rico retailers, it is unconstitutional under both the Commerce Clause

and the Supremacy Clause.  Twin County first argues that if the Act "governs Twin County's

purchases and sales of supermarket and general merchandise in New York and New Jersey," it

has an extraterritorial effect is impermissible under the Commerce Clause.  (Twin County's

---

[5]In this case both Twin County and Mendez are moving for summary judgment. However, Mendez is the party seeking to establish that its relationship with its suppliers is one of exclusive or sole distributorship. As such it has the burden of showing the lack of a genuine issue of material fact on this issue.

[6]Moreover, because any liability under Law 75 of the suppliers is dependent on the rights and obligations agreed to by the parties to the distribution agreement, the court will not venture to interpret said agreements between Mendez' and each individual supplier without providing them an opportunity to address the court on the issue.

Motion, p. 21). Twin County further claims that the Act's imposition upon the national suppliers of an obligation to control the sale and resale of its products would also suffer form the same constitutional infirmities. Twin County cites the Supreme Court for the proposition that:

> First, the Commerce Clause precluded the application of a state statute to commerce that takes place wholly outside the State's borders, whether or not the commerce has effects within the states. . . Second, a status that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature. The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State . . ."

Healy v. Beer Institute, 491 U.S. 324, 336 (1989).

As to Twin County's first argument, the court finds that it is moot as the court has already found that Law 75 does not directly govern the actions of third parties outside the grantor-distributor relationship. Regarding its second assertion, the court finds that it is misplaced. Since its enactment, Law 75 has survived a number of constitutional attacks.[7] Most recently in Gussco, the court had the opportunity to consider the constitutionality of the Acts protection against impairment of distributors' contractual rights. Holding that "the controversy in this case is not one of a constitutional nature, but one that involves contract interpretation," the court found no constitutional infirmities with the Act. Gussco 666 F.Supp. 328, 332. In Gussco, the court noted that "Gussco [the supplier] voluntarily appointed General as its exclusive distributor. That was the option that Gussco elected to follow. Said option binds Gussco as a valid obligation under Law 75. As such, the same is not offensive to the United States Constitution."

---

[7] See e.g., Gussco, 666 F.Supp. 328; Gonzalez v. Brown Group, Inc., 628 F.Supp. 436 (D. Puerto Rico 1985); Franceschini, Inc., v. Riley Co., 591 F.Supp. 414 (D. Puerto Rico 1984); Pan American Computer Corp. v. Data General Corp., 562 F.Supp. 693 (D. Puerto Rico 1983); San Juan Mercantile Corp. v. Canadian Transport Co., Ltd., 108 D.P.R. 211 (1978); J. Soler Motorsv. Kaiser Jeep Int'l., 108 D.P.R. 134 (1978); Warner-Lambert Co. v. Superior Court of Puerto Rico, 101 D.P.R. 378 (1973); Merle v. West Bend Co., 97 D.P.R. 403 (1969).

AO 72A
(Rev 8/82)

Id. at 331-332.

As noted above, under the Act, "[a] principal or manufacturer cannot tamper around with the dealer's rights as established by their voluntary negotiations." Id. at 331; Thus, a supplier's obligations to its distributor arise out of the rights and duties set out in the distributorship agreement voluntarily entered into by the parties. In the instant case, Mendez contends that a number of suppliers named Mendez as their exclusive or sole distributor in Puerto Rico. Each suppliers and Mendez voluntarily entered into this relationship. If the distributorship agreements in question include an obligation by suppliers to prevent the sale of their products to Puerto Rico retailers from sources other than Mendez, then that is a valid obligation under Law 75. The Act seeks to prevent impairment of contractual obligations voluntarily entered into by the parties. Accordingly, it could be argued that the controversy here, as it was in Gussco, is also one of contractual interpretation rather than constitutional law.

Nevertheless, because there is still a question as to whether the contractual obligation of the national suppliers includes ensuring that stateside wholesalers do not sell to Puerto Rico retailers outside the Commonwealth, passing judgement on the constitutionality of the act at this time would be premature. Cf. Government and Civic Employees Organizing Comm. v. Windsor, 353 U.S. 364, 366, 77 S.Ct. 838, 839, 1 L.Ed.2d 894 (1957) ("Federal courts will not pass upon constitutional contentions presented in an abstract rather than in a concrete form." (citing Rescue Army v. Municipal Court, 331 U.S. 549, 575, 584, 67 S.Ct. 1409, 1423, 1427, 91 L.Ed. 1666 (1947)); Cuesnongle v. Ramos, 835 F.2d 1486, 1497 (1st Cir.1987) (the court should adopt a strategy "that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication." (quoting Railroad Commission of Texas v. Pullman Co., 312 U.S.

21

at 500, 61 S.Ct. at 645.

2. *"First Sale" Doctrine*

Twin County also alleges that to the extent the Act requires national brand suppliers to control the further distribution of their trademarked goods, Law 75 conflicts with the "First Sale" doctrine under the Lanham Act, 15 U.S.C. § 1051 et. seq., and as such unconstitutional under the Supremacy Clause, U.S. Const. Art. VI, cl. 2. Under the Lanham Act, application of the "First Sale" Doctrine prevents a manufacturer of a trademarked item from controlling the downstream distribution of said trademarked good, once the manufacturer makes the first sale that item. Sebastian International v. Longs Drug Store, 53 F.3d 1073, 1074 (9th Cir.), cert denied, 116 S.Ct. 302 (1995) ("the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product."); NEC Electronics v. CAL Circuit A.B.C.O., 810 F.2d 1506, 1508 (9th Cir.), cert denied, 484 U.S. 851 (1987) ("once a trademark owner sells his products, the buyer ordinarily may resell the product under the original mark without incurring any trademark law liability."). Twin County argues that "Mendez claims that Law 75, as interpreted by the Gussco decision, places a statutory obligation on national brand name suppliers to control the distribution of their trademarked goods after their first sale to Twin County, so as to ensure that those trademarked goods do not, ultimately, end up being sold or resold in the Puerto Rico market. . . This extension of Law 75 would conflict with and 'stand as an obstacle to the accomplishment and execution of the full purpose and objectives' of federal law and policy under the Lanham Act. (Twin County's Motion, p. 25-26). As such, it argues, contrary to the Supremacy Clause.

Twin County is not aided by this argument since in the instant case no party has asserted

22

claims under trademark law. If Mendez can show that its suppliers agreed to ensure that others do not sell their products to retailers in Puerto Rico, it may be true that the Supremacy Clause bars the suppliers use of trademark law to prevent Twin County, or anyone, from selling to Puerto Rico retailers. However, they may have other remedies to ensure compliance with the agreement such as under contract law. The principal concern of Law 75 is preventing the impairment of the distributorship relationship by a grantor/principal. The method whereby the principal complies with the contractual obligations towards the distributor is beyond the scope of the law.

Consequently, summary judgment on Count V of Twin County's Amended Complaint to the extent is seeks that the court declare Law 75 unconstitutional under the Interstate Commerce Clause is also inappropriate at this stage as the same is premature. Therefore, summary judgment, to the extent Twin County seeks to declare Law 75 unconstitutional pursuant to the "First Sale" doctrine and the Supremacy Clause is Denied as premature..

## C. Mendez' Article 1802 Claims

In its cross-motion for summary judgment Mendez claims Twin County's business relationship with Grande constitutes tortuous interference with its exclusive and or sole distribution agreements with its suppliers as well as a contract prejudicial to a third party. In the instant case, Mendez has failed to show the requirements for these causes of actions are met. (The scope of the exclusivity relationship remains an open question.) As such, Mendez summary judgment on these claims is Denied.

*A. Tortuous Interference*

23

The elements of tortious interference with a contractual relationship were established by the Supreme Court of Puerto Rico in General Office Products v. A. M. Capen's Sons, Inc., 115 D.P.R. 553 (1984). "First, a contract must exist in which a third party intervenes. If the affected matter is merely an expectation of economic gain in the absence of a contract, the action does not proceed any further. Second, the defendant must have acted intentionally and with knowledge of the contract's existence. Third, the claimant has the burden of showing that it has suffered harm, and fourth, that said damage was caused by the defendant." Caribe Industrial Systems, Inc., v. National Starch and Chemical Co., 36 F.Supp.2d 448, 451 (D. Puerto Rico 1999) (citing A.M. Capen's, 155 D.P.R. at 558-559).

In the instant case, Mendez has failed to show the existence of the requisite elements for this cause of action. Mendez maintains that the first requirement of its tortious interference claim is met since "[t]here is an exclusive and or sole distribution agreement between Mendez and each of the principal-suppliers involved in this case." (Mendez' Opposition, p. 12). However, as noted above, Mendez did not demonstrate the existence of and exclusive or sole distributorship contract with all of its national suppliers. Moreover, as to those for which an "exclusive" relationship is shown, Mendez fails to demonstrate that its exclusive relationship require its suppliers to prevent third parties from selling to Puerto Rico retailers outside the Commonwealth. "[A] 'damage' is a breach or violation of a concrete subjective right." Dennis, 121 D.P.R. at 213 (citations omitted) (translation ours). Here, Mendez has failed to show that it had an exclusive relationship with the national suppliers and/or that such exclusive distribution agreement included the right to prevent retailers from purchasing the goods at issue from wholesalers outside Puerto Rico.

24

Further, as to the intent to cause damage, the Puerto Rico Supreme Court has held that said requirement is satisfied by the injured party proving or presenting facts that permit the inference that the contracting party acted intentionally, with knowledge of the existence of the contract. A. M. Capen's, 115 D.P.R. at 588. Mendez asserts that "Grande and Twin County acted with full knowledge of the existence of said [exclusive distributorship] contracts." (Mendez' Opposition, p. 12 ) Nevertheless, Mendez presents no evidence that Twin County acted intentionally or even that, when it engaged in the so-called "diversion scheme," it was aware of Mendez' relationship with its national suppliers. Once again there are issues of "motive" and "intent" which preclude issuance of summary judgment. William Coll, 50 F.3d at 1121; Lipsett, 864 F.2d at 895. Mendez claims that Twin County was "duty bound" to investigate the nature of Mendez' distributorship relationship, but conspicuously fails to point to where such an affirmative duty can be found in the elements enumerated by A.M. Capen's. Nor does Mendez cite any caselaw imposing such a duty. Mendez also claims that even if it was unaware, as a joint tortfeasor, Twin County should be imputed with Grande's knowledge of Mendez' business relationships. Mendez cites a number of examples where knowledge held by one individual is imputed to another.[8] This attempt to analogize those cases to the instant action is misguided. Most of not all of the relationships cited by Mendez, however, presuppose the existence of some kind of fiduciary duty owed to one party by the other. Moreover, none of the cases cited by Mendez support the proposition that courts may impute the knowledge of one party to another because of the mere fact that they may be joint tortfeasors.

---

[8]Mendez points out "that the knowledge of an attorney is imputed to his client, that the knowledge of an attorney is imputed to all the other members of his partnership, in cases of confiscation of property the knowledge of the person to whom the owner entrusts the property is imputed to the owner." (Mendez' Sur-Reply, p. 7).

*B. Contract prejudicial to third parties*

In <u>Dennis Metro Investors Corp. V. Citiy Federal Savings and Loan Ass'n</u>, 121 D.P.R. 197 (1988), the Puerto Rico Supreme Court made clear that:

> [f]or a contract prejudicial to third parties to exist the following requisites are necessary: (1) that a third party be affected; (2) that damage be caused to a third party; (3) that there be proximate cause between the damage and the contract; (4) that the intent to cause damage exists, be it on the part of both contracting parties or just one of them.

<u>Id.</u> at 212. (Translation ours).

Here also Mendez fails to show that the elements of the cause of action are met in this case. In order to have a contract in prejudice of a third party, there must be an injury—a breach or violation of a substantive contractual right—to the third party caused by said contract. <u>Id.</u> at 213. There is no injury if the third party is merely placed in a unfavorable position or interferes with interests not specifically protected. <u>Id.</u> Mendez maintains that the contractual arrangement between Grande and Twin County "damaged the legal relationship resulting from the exclusive and/or sole distribution rights for certain products in Puerto Rico granted to Mendez by its principal-suppliers." (Mendez' Opposition, p. 13). Because there are currently doubts as to the contractual rights claimed (namely that Mendez is the exclusive and/or sole distributor of all the suppliers at issue in this case; and that any such exclusive distributorship agreement was intended by the parties to preclude Puerto Rico retailers from purchasing goods—or mainland wholesalers from selling to said retailers— outside Puerto Rico), Mendez does not satisfy the "damage to the third party" requirement of this cause of action.

Accordingly, having failed at summary judgment level to meet the requisite elements for both the tortious interference and contract in prejudice of third parties causes of action, Mendez motion for summary judgment on Counts I and II of its counterclaim is Denied.

AO 72A
(Rev.8/82)

## V. CONCLUSION

For the reasons above, the court holds that

(1) Twin County's motion for summary judgment seeking to declare that Law 75 does not require Mendez' suppliers to prevent Twin County from selling the goods at issue to Puerto Rico retailers (Count IV) is DENIED as there are genuine issues of material fact in controversy.[9]

(2) Twin County's motion for summary judgment (Count V) seeking to declare Law 75 unconstitutional (a) under the Interstate Commerce Clause is DENIED as premature; (b) under the "First Sale" Doctrine and the Supremacy Clause is DENIED also as premature.

(3) Mendez' motion for summary judgement on its tortious interference claim (Count I ) is DENIED because there are genuine issues of material facts in controversy.  Further, there are issues of "motive" and "intent" barring summary judgment.  Mendez' motion for summary on its contract prejudicial to a third party claim (Count II) is DENIED, as there currently exist on the record genuine issues of material fact which remain in dispute.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September 1999.

P \FINALORD ERS\97-2052 WPD

DANIEL  R.  DOMINGUEZ
U. S.  DISTRICT JUDGE

---

[9]The Court will tackle the constitutional issue should the Court determine that the contracts are exclusive in nature.

27